## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

GINA M. ARTERBERRY,            )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-16-233-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## OPINION AND ORDER

Plaintiff Gina M. Arterberry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 37 years old at the time of the ALJ's decision. Claimant completed her education through the eighth grade. Claimant has worked in the past as a truck driver, crane operator, brick loader and unloader, machine cleaner, floater on an assembly line, cashier, and welder. Claimant alleges an inability to work beginning June 30, 2012 due to limitations resulting from fibromyalgia, shoulder injury, dyslexia, difficulty reading and

3

spelling, and bilateral carpal tunnel syndrome.

## Procedural History

On November 13, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 26, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") Bernard Porter by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding in McAlester, Oklahoma. By decision dated September 9, 2014, the ALJ denied Claimant's request for benefits. The Appeals Council denied review on March 30, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

properly evaluate the medical source evidence; and (2) failing to make a proper credibility determination.

**Consideration of the Medical Source Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of fibromyalgia, carpal tunnel syndrome, left shoulder injury, obstructive sleep apnea, migraine headaches, lumbar disc disease, cervical disc disease, angina, left knee strain/sprain, post-traumatic stress disorder, dyslexia, and major depression. (Tr. 22). The ALJ determined Claimant retained the RFC to perform a range of sedentary work. In so doing, the ALJ found Claimant could lift/carry ten pounds occasionally and five pounds frequently, sit for up to six hours, stand for up to two hours, and walk for up to two hours. Claimant could push and pull as much as she could lift and carry. Claimant was limited to occasional use of hand controls, occasional overhead reaching, and frequent handling, fingering, and feeling. She could occasionally climb ramps and stairs but must never climb ropes, ladders, or scaffolds. Claimant was limited to frequent balancing, stooping, and crouching were limited to frequent, occasional kneeling, and no crawling. Claimant should not work around unprotected heights or around moving mechanical parts and should avoid all environments where there are temperature extremes. Claimant was limited by the

5

ALJ to simple tasks, simple work related decisions, and frequent interactions with supervisors and co-workers. Time off task was considered to be accommodated by normal breaks. Claimant required a sit/stand option, which allows for a change in position at least every 30 minutes, lasting no more than three to four minutes at a time. (Tr. 25).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of document scanner, address clerk, and assembly inspector. (Tr. 34). As a result, the ALJ determined Claimant was not disabled from June 30, 2012 through the date of the decision. (Tr. 35).

Claimant asserts the ALJ failed to properly consider and evaluate the opinions of two treating physicians. Dr. Aaron Brown completed a mental medical source statement on Claimant on April 14, 2014. In the statement, Dr. Brown concluded Claimant experienced a

> Complete loss of ability to perform the names (sic) activity in <u>regular, competitive employment and</u> in a sheltered work setting; could do so only to meet basic needs at home. This (sic) is no "useful" ability to perform this activity in a competitive setting.

in the functional areas of the ability to accept instructions and respond appropriately to criticism from supervisors and the ability to behave in an emotionally stable manner. (Tr. 717).

6

He also found Claimant had a

> Substantial loss of ability to perform the named activity in <u>regular, competitive employment</u> and, at best, could do so only in a sheltered work setting where special considerations and attention are provided. Competitive work – 8 hrs. (sic) day.

in the functional areas of the ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; maintaining concentration for an extended period (being 2 hrs.); maintaining attention/stay on task for an extended period (being 2 hrs.); the ability to perform at a consistent pace without an unreasonable number and length of rest periods/breaks; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, the ability to respond appropriately to changes in a routine work setting; the ability to cope with normal work stresses (even those inherent in low stress jobs) without exacerbating pathologically based symptoms; and the ability to finish a normal work week without interruption from psychologically based symptoms. (Tr. 716-17).

Dr. Brown also found Claimant had a GAF of 50. Claimant's symptoms included crying spells, anhedonia, low energy, chronic

7

disturbances of mood, difficulty thinking/confusion, and chronic depression. (Tr. 717). Claimant was estimated by Dr. Brown to require to be absent from work more than four days per month due to her condition. The mental impairments were severe enough to be present regardless of drug and alcohol abuse. (Tr. 718).

The ALJ gave Dr. Brown's opinion "little weight" because (1) it is inconsistent with the evidence of record as a whole showing essentially normal mental status testing, including Dr. Brown's own testing; (2) Dr. Brown had only seen Claimant on two occasions before rendering an opinion; (3) Claimant did not seek specialized mental health treatment; and (4) Claimant's treatment consisted of nothing more than basic medication management with no hospitalizations or counseling services. (Tr. 31).

Claimant suggests that the ALJ picked out only the findings which supported a finding of non-disability. The ALJ provided several specific reasons for according Dr. Brown's opinion reduced weight. Dr. Brown indicated in his treatment notes that Claimant's speech was low volume but coherent, her affect was constricted, her mood was depressed with feelings of helplessness and worthlessness, but without suicidal intent or perceptual disturbances. She was alert to person, place, and situation, with average intelligence, and fair insight and judgment throughout Dr. Brown's treatment

8

notes. (Tr. 710, 713, 752, 755). The ALJ determined that these findings did not support a marked limitation in the ability to accept criticism or to behave in an emotionally stable manner. (Tr. 31). Relying upon the inconsistency in a treating physician's own treatment notes and his opinion is reasonable. *See* Bainbridge v. Colvin, 68 Fed. App'x 384, 390 (10th Cir. 2015)(unpublished).

The ALJ also relied upon Dr. Brown's sparse treatment record, having only attended Claimant on a limited basis. While this does not bear upon the question of whether Dr. Brown constituted Claimant's treating physician, it does provide an indicator of the limited base of knowledge from which Dr. Brown drew his extensive conclusions of limitation in his source statement.

The ALJ also found the opinion to be inconsistent with the record of assessments of Claimant's condition by other providers. Dr. William Cooper performed assessments on October 15, 2010 and February 15, 2013. With regard to Claimant's mental status, he found her to be "awake, alert, and oriented x 3. Recent and remote memories are intact. Speech is 100% intelligible. Thought processes appear normal. No signs of overt pathology are noted." (Tr. 491, 598). Dr. Baha A. Abu-Esheh, a neurologist, found Claimant's speech to be normal, orientation was normal, attentoin and calculation were normal, no impairment of abstract thinking,

9

impairment of judgment, impairment of long term memory or impairment of short term memory. (Tr. 483).

The ALJ also considered the fact that Claimant did not seek mental health treatment, outside of the limited visits to Dr. Brown. Certainly, the ALJ is permitted to consider the failure to seek treatment as an indicator of the seriousness of the impairment. *See* Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995).

Claimant contends the mental consultative examination by Dr. Shalom Palacio-Hollmon supports Dr. Brown's findings. The examination occurred in October of 2010, over a year before Claimant's onset date of June of 2012. (Tr. 543-46). This record might be relevant to establish a longitudinal record of the impairment. However, the fact remains that the report is also contradicted by subsequent findings of essentially the same information that supported the rejection of Dr. Brown's opinion.

Claimant also argues the ALJ should have given weight to his GAF score of 50. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss

a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work."

Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). This Court finds the ALJ was under no legal obligation to discuss Claimant's GAF score or the weight he assigned to it.

Claimant also contends the ALJ failed to properly consider the opinion of Dr. Sangeeta Khetpal, also a treating physician. Dr. Khetpal completed a medical source statement on June 12, 2014. He determined Claimant could "less than occasionally" lift, use his hands, bend, climb, balance, stoop, kneel, crouch, or crawl. (Tr. 720). He also could not stand or walk and could sit for less than one hour to none. Dr. Khetpal noted Claimant "can not perform any activities." His diagnoses included severe fibromyalgia, severe irritable bowel syndrome, and severe depression. (Tr. 721).

Dr. Khetpal found Claimant had all 18 tender points for fibromyalgia along with irritable bowel syndrome, chronic headaches, temporomandibular joint dysfunction, sleep disorder, severe fatigue, and cognitive dysfunction. Claimant would suffer continuous severe pain. He concluded that Claimant "can not be place (sic) in work." (Tr. 722). He also stated Claimant would have to elevate his legs 30-40 degrees. He would experience "all bad days mostly." (Tr. 723).

In an understatement, the ALJ concluded that Dr. Khetpal

12

"opinion appears to be an overestimate of the severity of the claimant's functional restrictions and contrasts sharply with his own treatment records and other evidence in record." (Tr. 32). An ALJ must first determine whether the opinion of a treating physician is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

He must then decide the level of reduced weight the opinion is to be accorded. An individual with the level of limitations found by Dr. Khetpal could find it difficult to exist. Nothing in the medical record supports such restrictive limitations in Claimant's ability to engage in basic work activities. The ALJ's determination to give Dr. Khetpal's opinion "little weight" may be generous but it certainly is not erroneous.

Claimant also challenges that the ALJ did not adequately consider the statements of Mary Wells, Dr. Khetpal's assistant, who opined that Claimant needed the use of a power wheelchair. (Tr.

729). Ms. Wells is not a medical professional whose opinion must be weighed. (Tr. 30), Franz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007). The ALJ was also correct in pointing out that Ms. Wells' statement contradicted Dr. Khetpal's finding that Claimant had a normal gait. (Tr. 30). The ALJ did not err in his consideration of Ms. Wells' assertion.

### Credibility Determination

Claimant contends the ALJ failed to properly assess her credibility. The ALJ concluded that her statements were "not entirely credible" in boilerplate language. However, the ALJ continued further to explain his credibility finding. While she complained of pain, the diagnostic testing did not support her complaints. Nerve conduction studies demonstrated only mild problems. (Tr. 27, 431, 451, 642, 695). Range of motion findings were generally normal, albeit some with pain. (Tr. 491, 501, 759, 762). Claimant's pain was effectively managed without surgery. (Tr. 27-29). The ALJ considered third party statements from Claimant's mother and daughter but ultimately gave them "little weight" because of their subjectivity. (Tr. 32).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

14

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's and the third parties' statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's

15

questioning of Claimant's credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE